IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **RAVEN WILLIAMS,** *et al.*, ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| v. ) | CIVIL ACTION 15-0123-WS-N |
| ) | |
| **ROBERT W. OMAINSKY,** *et al.*, ) | |
| ) | |
|     **Defendants.** ) | |

**ORDER**

      This matter comes before the Court on the parties' Joint Motion for Stipulated Judgment Approving the Parties' Proposed Settlement (doc. 143). In support of this Joint Motion, the parties have submitted a memorandum of law and exhibits, including a copy of the Settlement Agreement and Release of Claims, as well as the Declarations of Rachel McGinley and Daniel Arciniegas bearing on the issue of attorney's fees. (*See* doc. 143, Exhs. 1 & 2.) The Joint Motion is now ripe for disposition.[1]

**I.    Background.**

      In their Second Amended Collective Action Complaint (doc. 29), the named plaintiffs, Raven Williams, D'Andre Wilkerson, Tiffany Newburn, Danielle Powe, and Jennifer Hampton

---

[1]    Also pending is the parties' Joint Stipulation of Dismissal with Prejudice as to Opt-In Plaintiff Dominique Williams (doc. 144). In that filing, the parties stipulate and agree that Dominique Williams' claims should be dismissed with prejudice on grounds of judicial estoppel. Specifically, the parties explain that Williams failed to list her claims against defendants Robert Omainsky and Fried Stewed Nude, Inc., in a bankruptcy petition filed in U.S. Bankruptcy Court in May 2016; and that such omission operates as judicial estoppel in this case, as a matter of law. Plaintiffs' counsel represents Dominique Williams in this matter; indeed, her signed Consent to Join Form dated March 16, 2016, reflects that Williams "designate[d] the law firm and attorneys of Wiggins, Childs, Pantazis, Fisher, & Goldfarb LLC, to represent [her] … for all purposes of the Federal Labor Standards Act Lawsuit against Robert Omainsky and Fried, Stewed, Nude, Inc." (Doc. 108, Exh. 1.) As such, plaintiffs' counsel is empowered to bind her to this stipulation. The Joint Stipulation is effective as filed pursuant to Rule 41(a)(1)(A)(ii), Fed.R.Civ.P.; therefore, the claims of opt-in plaintiff Dominique Williams asserted in this action are **dismissed with prejudice**.

(collectively, the "Named Plaintiffs"), brought this action seeking unpaid wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA").  The Named Plaintiffs are current or former servers employed by defendants, Robert W. Omainsky and Fried Stewed Nude, Inc. (collectively, "Wintzell's"), at Wintzell's Oyster House restaurant locations in Downtown Mobile, West Mobile, and/or Saraland, Alabama.  Although they alleged various FLSA violations, plaintiffs' primary theory of liability was that Wintzell's had violated the FLSA by operating an invalid tip pool.  The FLSA generally establishes a minimum hourly wage of $7.25; however, employers may claim a "tip credit" and pay tipped employees a cash hourly wage as low as $2.13, so long as certain criteria are satisfied.  One such prerequisite is that "all tips received by such employee have been retained by the employee, except that this section shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."  29 U.S.C. § 203(m).  The Named Plaintiffs' position was that the Wintzell's tip pool flunked this requirement, that the tip pool was therefore invalid, that Wintzell's could not properly rely on the "tip credit" to pay its servers less than $7.25 per hour, and that Wintzell's owes its servers the difference between minimum wage and the wage actually paid for each hour they were on the clock.  Plaintiffs also asserted that Wintzell's violated the FLSA by claiming a tip credit for non-tipped work that comprised a substantial part of the servers' duties.[2]

For its part, Wintzell's disputed plaintiffs' theory of liability and denied any defects in its tip pool or its claim of a tip credit to reduce plaintiffs' cash wages below the statutory minimum.  In particular, Wintzell's maintained that the challenged participants in the tip pool were, in fact, tipped employees, and that plaintiffs did not spend substantial time performing related but non-tipped duties.  As such, defendants' position was that they had fully paid plaintiffs for their work in conformity with the FLSA.

The parties have litigated this action vigorously since its inception in March 2015.  The extensive motion practice included defendants' Motion for More Definite Statement (doc. 13), defendants' Motions to Dismiss and Compel Mediation/Arbitration (docs. 60, 74), and plaintiffs'

---

[2] *See generally Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011) ("We believe that the DOL's interpretation contained in the Handbook – which concludes that employees who spend 'substantial time' (defined as more than 20 percent) performing related but nontipped duties should be paid at the full minimum wage for that time without the tip credit – is a reasonable interpretation of the regulation.").

Motion for Conditional Certification and Court-Facilitated Notice (doc. 30), all of which were highly contested.  In December 2015, the Court entered an Order (doc. 82) staying the claims of opt-in plaintiffs who had executed Employment Arbitration Agreements in March 2015.  In January 2016, the Court entered an Order (doc. 90) conditionally certifying a class consisting of all current and former employees, including servers, of the Wintzell's restaurants located in Downtown Mobile, Saraland, and West Mobile who were paid a cash wage less than minimum wage (excluding any credit for tips retained), or for whom Wintzell's claimed a "tip credit" while requiring employees to contribute a portion of their tips to non-tipped employees, all for the period spanning November 5, 2012 through March 6, 2015.  Court-facilitated notice was provided to potential opt-in plaintiffs, and a total of 37 opt-in plaintiffs (the "Opt-In Plaintiffs"), in addition to the five Named Plaintiffs, filed timely Consent to Join Forms.

Over a period of months, the parties diligently negotiated an arm's-length settlement to resolve this action in its entirety, including all claims brought by both the Named Plaintiffs and the Opt-In Plaintiffs.  They engaged in informal paper discovery, with Wintzell's producing payroll records for the litigation period documenting employee job classifications, clock-in and clock-out times, regular and overtime hours, regular and overtime rates of pay, sales and tips for each individual.  Plaintiffs reviewed those records on an individual-by-individual basis, and engaged in dialogue with Wintzell's as to any perceived deficiencies or inaccuracies in those records for specific employees.  The parties designed damages models based on potential litigation outcomes, and negotiated at great length.  Ultimately, the parties reached a global settlement that they now request this Court to approve as fair and reasonable.

**II.     Settlement Terms.**

The parties represent that the settlement upon which they have agreed "reflects a substantial portion of [plaintiffs'] alleged damages or more than Plaintiffs could expect to recover … if they were to prevail at trial." (Doc. 143, at 1-2.)  By the terms of the Settlement Agreement and Release of Claims (doc. 143, Exh. 1), defendant Fried Stewed Nude, Inc. ("FSN") shall pay the sum of $424,238.35 to plaintiffs in three installments over a 170-day period.  That settlement amount consists of two components: damages payments and incentive payments.  The damages payments total $399,238.35, and will be paid out to the five Named Plaintiffs and the 37 Opt-In Plaintiffs in accordance with a schedule appended to the Settlement

Agreement. (Doc. 143, Exh. 1 at Appendix A.)[3] The parties explain that these payments were calculated using an agreed-upon formula pursuant to which each plaintiff received "the tip credit claimed plus an equal amount in liquidated damages for 85% of the recorded hours." (Doc. 143, at 5.)[4] The settlement amount also includes $25,000 in incentive payments, to be allocated to the five Named Plaintiffs in the amount of $5,000 each. The Settlement Agreement explains that "[t]hese incentive payments are meant to compensate the representatives for their participation in the mediation process as well as other services they provided the class." (Doc. 143, Exh. 1 at 2.) The Settlement Agreement also clarifies that the incentive payments "do not diminish the amount any settlement class member would have otherwise been entitled to receive under the agreed upon formulas for settlement distribution." (*Id.* at n.2.)

In addition to the settlement amount described above, the Settlement Agreement contemplates that FSN will pay the sum of $117,500 as plaintiffs' reasonable attorney's fees and costs. (*Id.* at 3.) Plaintiffs' evidence is that "the amount for Plaintiffs' attorneys' fees was agreed upon separately and without regard to the amount paid to Plaintiffs." (McGinley Decl. (doc. 143-2), ¶ 8.) Plaintiffs also show that they have more than 450 hours in attorney time billed in the case already (plus considerable time that was not billed), more than 35 hours of other legal professional billed time, and more than $4,000 in expenses (*i.e.*, legal research, filing fees, postage, copies, etc.). (McGinley Decl., ¶¶ 2-3, Exhs. A & B; Arciniegas Decl., ¶¶ 9-13.) The requested attorney's fee amount is inclusive of work that is yet to be performed in implementing and finalizing the settlement, such as "informing clients of the settlement,

---

[3] According to Appendix A of the Settlement Agreement, the payments to individual plaintiffs vary widely, from a low end of $74.80 to plaintiff Vultaggio to a high end of $35,979.14 to plaintiff Odom. All told, 18 of the 42 plaintiffs will receive payments in excess of $10,000, while 11 plaintiffs will receive payments of less than $3,000.

[4] The table found at Appendix A to the Settlement Agreement suggests the payment for each plaintiff was calculated in this manner: (i) the parties derived the total tip credit that Wintzell's had claimed for each employee during the time period covered by this lawsuit; (ii) they multiplied that tip credit amount by 0.85; and (iii) the resulting figure was divided in half to reach the back pay amount, with an equal amount allocated for liquidated damages to be reported on a Form 1099. As the Settlement Agreement puts it, the damages amount "constitutes 85% of each of the Plaintiffs' three year liquidated damage totals from the date of their opt-in forms." (Doc. 143, Exh. 1 at 2.)

answering questions from clients in regards to the settlement administration, and ensuring that the proceeds are timely and appropriately distributed." (McGinley Decl., ¶ 8.)

In exchange for the foregoing payments, both Named Plaintiffs and Opt-In Plaintiffs will release all claims they have against FSN, its affiliates, officers and the like for FLSA violations "for work performed as employees at any and all Wintzell's Oyster House locations owned and operated by FSN at any time prior to the execution of this Agreement." (Doc. 143, Exh. 1 at 4.)

### III. Analysis of Settlement.

#### A. *Necessity of Judicial Approval.*

In the overwhelming majority of civil actions brought in federal court, settlements are not subject to judicial scrutiny or approval. However, FLSA settlements must be handled differently. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp.2d 1346, 1348 (M.D. Fla. 2010) ("Settlement of an action under the FLSA stands distinctly outside the practice common to, and accepted in, other civil actions."). This is because "Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). "Despite this general rule, an employer and an employee may settle a private FLSA suit under the supervision of the district court" where there is a "bona fide dispute over FLSA coverage." *Hogan v. Allstate Beverage Co.*, 821 F. Supp.2d 1274, 1281 (M.D. Ala. 2011). The mechanics of such a settlement are that "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353.

Where, as here, a district court is asked to approve an FLSA settlement between private litigants, the court's responsibility is to ascertain whether the parties' negotiated resolution comports with the statute's terms. *See, e.g., Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307-08 (11th Cir. 2013) ("[t]he purposes of the FLSA are undermined whenever an employer is allowed to escape liability for violations of the statute"); *Miles v. Ruby Tuesday, Inc.*, 799 F. Supp.2d 618, 622-23 (E.D. Va. 2011) ("the reason judicial approval is required for FLSA settlements is to ensure that a settlement of an FLSA claim does not undermine the statute's terms or purposes"). A settlement may be approved when the court confirms that "employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount

that remains in controversy." *Hogan*, 821 F. Supp.2d at 1282. Thus, the touchstone of the inquiry is whether the proposed settlement "constitutes a fair and reasonable compromise of a *bona fide* FLSA dispute." *Crabtree v. Volkert, Inc.*, 2013 WL 593500, *3 (S.D. Ala. Feb. 14, 2013).

An important caveat to this mandatory judicial oversight is that "[i]n reviewing FLSA settlements under *Lynn's Food*, courts should be mindful of the strong presumption in favor of finding a settlement fair." *Parker v. Chuck Stevens Chevrolet of Atmore, Inc.,* 2013 WL 3818886, *2 (S.D. Ala. July 23, 2013) (citations and internal quotation marks omitted); *see also Wingrove v. D.A. Technologies, Inc.*, 2011 WL 7307626, *2 (N.D. Ga. Feb. 11, 2011) (recognizing "strong presumption" that FLSA settlements are fair and reasonable). Such deference is warranted because "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement" and "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Management Co.*, 715 F. Supp.2d 1222, 1227 (M.D. Fla. 2009).

   **B. *Fairness/Reasonableness of Settlement.***

     1. *Damages Payments.*

Without question, this action involves a *bona fide* dispute over FLSA coverage. As noted, plaintiffs' position was that Wintzell's had used an invalid tip pool arrangement, rendering it ineligible to claim a tip credit and entitling plaintiffs to recover the difference between the statutory minimum wage and the hourly wage actually paid for all hours during the liability period. Plaintiffs further maintained that Wintzell's could not claim a tip credit for the substantial non-tipped work they performed. Defendants countered, however, that the Wintzell's tip pool was valid, that tips were not shared with non-tipped employees, that the employees whom plaintiffs identified as non-tipped employees were actually tipped bussers who occasionally assisted with dishwashing, and that non-tipped work did not comprise a substantial part of plaintiffs' duties. Had this action proceeded to trial, Wintzell's would have argued that it paid plaintiffs everything they were owed under the FLSA and that it had properly claimed the tip credit. The jury would have had to decide whether the Wintzell's tip pool was valid or not, based on the job duties of the personnel who shared in that pool. Had defendants been able to persuade the finder of fact of the merit of their position, plaintiffs' FLSA claims would have

been dealt a staggering blow; indeed, it was possible that plaintiffs might recover nothing. For these and other reasons, the Court readily determines that plaintiffs' FLSA claims were actually, reasonably in dispute, thereby giving rise to the propriety of a *Lynn's Food* compromise settlement.

Against this backdrop of substantial litigation uncertainty and the risk of plaintiffs coming away empty-handed at trial, the parties agreed to a settlement to resolve the FLSA claims of the five Named Plaintiffs and the 37 Opt-In Plaintiffs. This settlement was negotiated over an extended time period, and was aided by defendants' production of detailed payroll records that enabled plaintiffs to model their damages and work with real numbers rather than mere hypotheticals or estimates. As reflected in the Joint Motion, the settlement contemplates that all plaintiffs will receive compensation (including tip credit and liquidated damages) for 85% of the recorded hours spanning the entire litigation period. This settlement does not result in a recovery of 100 cents on the dollar for all participating plaintiffs; however, by plaintiffs' counsel's reckoning, it "reflects a substantial portion of their alleged damages or more than Plaintiffs could expect to recover" at trial. (*Id.* at 1-2.)

In short, the settlement documented in the Joint Motion shows that plaintiffs accepted less money in settlement than they would have received had they prevailed on all matters at trial, in exchange for the certainty of receiving payment now without the burden of litigating issues that might have reduced or even negated plaintiffs' recovery. After careful examination of the Joint Motion, the supporting documentation filed therewith, and all other relevant materials in the court file, the Court concludes that the proposed damage payouts to plaintiffs represent a fair and reasonable compromise of a *bona fide* FLSA dispute.

Numerous considerations support and inform that determination. First, the result of the settlement is that each participating plaintiff will receive a damages payment (inclusive of liquidated damages) based on 85% of the recorded hours for the entire period reserved for "willful" violations. Second, both sides are represented by competent, experienced counsel well-versed in this area of the law. Third, the parties have shown that this settlement was the product of arm's-length, good-faith negotiations conducted after exchange of discovery materials that allowed each side to develop an informed factual basis for same. Fourth, plaintiffs confronted substantial risk factors that might have jeopardized or curtailed their ability to prevail at trial. Fifth, in the absence of a settlement, this action would in all likelihood have proceeded down the

same drawn-out, adversarial path on which it had previously embarked, resulting in proliferation of attorney's fees and expenses for both sides, considerable delay for plaintiffs to capture any recovery, and only limited upside for a greater overall monetary award at the end of the day. Sixth, the settlement is equitable in its treatment of different classes of plaintiffs (*i.e.*, Named Plaintiffs versus Opt-In Plaintiffs), with all of them receiving comparable damages payments using the same formula. And seventh, plaintiffs' counsel have represented that their clients understand the Settlement Agreement and have knowingly, voluntarily agreed to its terms. (Doc. 143, at 4.)

        2.    *Incentive Payments.*

As noted, one term of the Settlement Agreement is that each of the five Named Plaintiffs shall be paid an incentive payment of $5,000, for an aggregate total of $25,000. According to the Joint Motion, the purpose of these payments is to compensate the Named Plaintiffs for time they spent participating in this case, their lost wages and actual expenses incurred in the course of such participation (including attendance at mediation), and their service to the class.

"[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action. … Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives." *In re Checking Account Overdraft Litigation*, 830 F. Supp.2d 1330, 1357 (S.D. Fla. 2011) (citations and internal quotation marks omitted); *see also In re Domestic Air Transp. Antitrust Litigation*, 148 F.R.D. 297, 358 (N.D. Ga. 1993) ("The Court finds that incentive awards are appropriate to recognize the efforts of the representative plaintiffs to obtain recovery for the class. Modest compensation may sometimes be merited for extra time spent by the class representatives in meeting with class members, gathering discovery materials on behalf of the class, and similar efforts.") (citation and internal quotation marks omitted); *Faught v. American Home Shield Corp.*, 2010 WL 10959223, *11 (N.D. Ala. Apr. 27, 2010) ("Requests for incentive payments to named class representatives are fairly customary. These payments are intended to recognize the time and efforts a class representative spends on behalf of the class."). In determining whether a requested service award is appropriate, courts consider such factors as "(1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class

representatives expended in pursuing the litigation." *In re Checking Account*, 830 F. Supp.2d at 1357.

Plaintiffs have made a substantial showing that the Named Plaintiffs have advanced this litigation and protected and promoted the interests of the settlement class. On that basis, the Court concludes that the modest incentive payments proposed by the parties are appropriate. Moreover, those payments do not have the effect of reducing the damages awards to any plaintiff participating in the settlement; to the contrary, the parties represent that "[t]he proposed incentive payment to each named Plaintiff did not diminish the amount any settlement class member would receive[] under the formulas used to calculate individual settlement amounts." (Doc. 143, at 6.) For all of these reasons, the proposed incentive awards to each of the Named Plaintiffs in the amount of $5,000 (or $25,000 in total) are **approved** as fair and reasonable.

        3.     *Attorney's Fees.*

Pursuant to their settlement, the parties have agreed that FSN will pay plaintiffs' counsel's attorney's fees and costs in the total amount of $117,500. Typically, courts must consider the reasonableness of the negotiated attorney's fee component of an FLSA settlement. *See, e.g., Crabtree*, 2013 WL 593500, at *7 ("a court reviewing an FLSA settlement must review the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement") (citation and internal quotation marks omitted).

Here, the parties represent that they negotiated the attorney's fee portion of the settlement only after coming to an agreement on back pay and liquidated damages. Indeed, the Joint Motion specifies that "[t]he amount for attorneys' fees and costs was not discussed until *after* Defendants had agreed to pay plaintiffs the above amount as settlement for individual claims ..., including incentive compensation for the named Plaintiffs." (Doc. 143, at 6.)[5] As such, the record before the Court forecloses any suggestion that the fee portion of the settlement was at the expense of statutory compensation owed to plaintiffs. In other words, the proposed settlement set forth in the Joint Motion is not a zero-sum game in which each settlement dollar allocated to

---

[5] This representation is echoed in counsel's declaration, averring that "the amount for Plaintiffs' attorneys' fees was agreed upon separately and without regard to the amount paid to Plaintiffs." (McGinley Decl., ¶ 8.)

plaintiffs' lawyers results in a dollar of FLSA compensation being taken from plaintiffs' pockets. While attorney's fee settlements in FLSA cases may be problematic for *Lynn's Food* analysis where the fee award adversely impacts the plaintiffs' recovery, no such concerns exist here.  As such, the sound policy justifications counseling in favor of judicial reasonableness review of the attorney's fee portion of FLSA settlements are not implicated.[6]

At any rate, the Court has reviewed plaintiffs' counsel's time records and declarations appended to the Joint Motion.  Such review confirms that the proposed $117,5000 payment to plaintiffs' counsel appears fair and reasonable under the circumstances, in light of the costs expended, results achieved, work performed, hours spent, and hourly rates awardable.  In particular, the record chronicles the labor-intensive manner in which this litigation unfolded, including defendants' aggressive motion practice at every juncture.[7]  Furthermore, the record reflects that the agreed-upon attorney's fees represent a not-insubstantial discount from plaintiffs' counsel's total billings in the case to date (not counting anticipated future work for

---

[6] *See, e.g., Crabtree*, 2013 WL 593500, at *7 n.4 ("persuasive district court authority has deemed scrutiny of the reasonableness of plaintiff's agreed-upon attorney's fees to be unnecessary in an FLSA settlement where the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, except in circumstances where the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney") (citations and internal quotation marks omitted); *Bonetti*, 715 F. Supp.2d at 1228 (deeming scrutiny of reasonableness of attorney's fee payment in FLSA settlement unnecessary unless "the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney"); *Wing v. Plann B Corp.*, 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012) (declining to assess reasonableness of attorney's fee payment in FLSA settlement where "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel").

[7] For example, defendants brought motions attacking the adequacy of plaintiffs' pleadings, seeking dismissal of this action, and demanding mediation/arbitration; moreover, defendants stridently opposed plaintiffs' motion for conditional certification.  As plaintiffs' co-counsel explained, "This case involved several motions that required extensive legal research," and motions obligating counsel to "spend considerable time investigating and preparing evidentiary material in support of several motions that required a particular knowledge of the case law." (Arciniegas Decl., ¶ 10.)  Plaintiffs' counsel also devoted many hours to the settlement process, including preparation for and attendance at a settlement conference and mediation, calculation of damages for each plaintiff on a shift-by-shift basis, and plaintiff-by-plaintiff consultations about the proposed settlement to obtain settlement authority.  (*Id.*, ¶ 11.)

which no additional compensation will be awarded, and thousands of dollars in expenses). Based on the totality of the information presented in the Joint Motion and its exhibits, the Court is satisfied that the proposed attorney's fee payment to plaintiffs' counsel constitutes adequate, reasonable compensation and that plaintiffs' recovery was neither tainted nor otherwise adversely affected by the fee award negotiated by their attorneys.[8]

## IV.  Conclusion.

For all of the foregoing reasons, it is **ordered** that the parties' Joint Motion for Proposed Judgment Approving the Parties' Proposed Settlement (doc. 143) is **granted**.  The settlement of plaintiffs' FLSA claims is **approved** as fair and reasonable pursuant to the analysis required by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). In accordance with the requirements of *Lynn's Food*, a stipulated final judgment will be entered. *See Nall*, 723 F.3d at 1308 ("The agreement between Nall and Malik was not made under the supervision of the Secretary of Labor, so ***it is valid only if the district court entered a 'stipulated judgment' approving it.***") (emphasis added).

The Court will retain jurisdiction for the limited purpose of enforcing the settlement and the terms of this Order for a period of 200 days.  If no party files a notice within 200 days after entry of this Order reflecting that settlement has not been consummated, the stipulated judgment shall be deemed satisfied.

DONE and ORDERED this 27th day of January, 2017.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[8]  In so concluding, the Court does not expressly endorse or approve the accuracy of plaintiffs' calculations of their accrued attorney's fees, the suitability of the billing rates used for the relevant legal market, or the propriety of particular time entries.